UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| YAFEI HAUNG, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:13CV00299 AGF |
| | ) | |
| LIFE INSURANCE COMPANY OF | ) | |
| NORTH AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

Plaintiff Dr. Yafei Huang brings this action against Defendant Life Insurance Company of North America, for damages and equitable relief pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001. Defendant issued a basic and supplemental life insurance policy ("Policy") to Plaintiff's husband, Dr. Ping Liu ("Liu"). After Liu's death, Defendant denied Plaintiff's claim for supplemental life insurance benefits on the ground that Liu failed to report a change in his health status.

In her first amended complaint, Plaintiff alleges that the "Incontestability Clause" of the Policy violates Mo. Rev. Stat. § 376.697(3), and Plaintiff seeks to reform the terms of the Incontestability Clause to conform to the Missouri statute (Count I). Plaintiff asserts that under the terms of the Policy, as reformed pursuant to Mo. Rev. Stat. § 376.697(3), Defendant may not deny Plaintiff's claim for benefits on the ground that Liu failed to report a change in his health status, and Plaintiff is therefore entitled to recover the supplemental life insurance benefits due under the Policy (Count II).

Plaintiff also asserts claims for equitable estoppel (Count III), promissory estoppel (Count IV), and waiver (Count VI), based on Defendant's alleged misrepresentations that Liu would qualify for supplemental benefits without having to satisfy an insurability or good health requirement.  Finally, Plaintiff contends that Defendant breached its fiduciary duties under ERISA, as well as its common law duty of loyalty (Count V).

Now before the Court is Plaintiff's motion (Doc. No. 21) for summary judgment on Counts I, II, III, and V, and Defendant's motion (Doc. No. 46) for summary judgment on all Counts.  For the reasons set forth below, both motions shall be **GRANTED in part** and **DENIED in part**.

## BACKGROUND

Before discussing the facts in this matter, the Court will briefly address Defendant's argument that the affidavit submitted by Plaintiff in support of her motion for summary judgment should be disregarded as an impermissible supplement to the administrative record.  Generally, a court's review of a denial of benefits under ERISA is limited to evidence that was before the plan administrator, particularly where the evidence could have been submitted to the administrator during the initial claims process. *See, e.g., Davidson v. Prudential Ins. Co. of America*, 953 F.2d 1093, 1095 (8th Cir. 1992).  Plaintiff asserts that this rule does not apply to claims for equitable relief and, in support of her assertion, cites numerous district court cases from other jurisdictions.  *See, e.g., Jensen v. Solvay Chems., Inc.*, 520 F. Supp. 2d 1349, 1355-56. (D. Wyo. 2007).  The Court need not decide whether the affidavit is admissible because, while Plaintiff's affidavit provides more details regarding some of the evidence contained in the

administrative record, the affidavit's additional details do not alter the Court's decision regarding the motions for summary judgment.

Unless otherwise indicated, the facts set forth below are undisputed. The Policy was issued to Liu's employer, St. Luke's Hospital ("Hospital"), in Missouri on April 1, 2001 and states that it "shall be governed" by Missouri law. (Doc. No. 26-5 at 38.) The Policy states that it is "made up of the Policy, the application of the Employer, a copy of which is attached to the Policy, and the applications, if any, of the Insureds." (Doc. No. 26-5 at 84.) The Policy selects Defendant Life Insurance Company of North America as the plan's fiduciary under ERISA and grants Defendant "authority, in its discretion, to interpret the terms of the Plan documents, to decide questions of eligibility for coverage or benefits under the Plan, and to make any related findings of fact." (Doc. No. 26-5 at 77.)

The Policy contains an Incontestability Clause, which states:

> All statements made by the Employer or by an Insured are representations not warranties. No statement will be used to deny or reduce benefits or as a defense to a claim, unless a copy of the instrument containing the statement has been furnished to the claimant. In the event of death or legal incapacity, the beneficiary or representative must receive the copy.

(Doc. No. 26-5 at 84.)

The Policy offers Basic life insurance benefits, as well as Voluntary Term Life Insurance options, which provide supplemental benefits. The policy also states that, during the annual re-solicitation period, "an Employee who is eligible for the Voluntary Term Life Insurance portion of this Policy but who has not previously enrolled may become insured under the Policy, by satisfying the Insurability Requirement." (Doc. No.

26-5 at 44.) The "Insurability Requirement" states that "[a]n eligible person will satisfy the Insurability Requirement for an amount of coverage on the day the Insurance Company agrees in writing to accept him or her as insured for that amount. To determine a person's acceptability for coverage, the Insurance Company will require evidence of good health and may require it be provided at the Employee's expense." (*Id.* at 86.)

Liu was employed as a full-time physician at the Hospital for approximately two and a half years. The Hospital provided Liu with the Policy as part of an employee welfare benefit plan within the meaning of 29 U.S.C. § 1002(1). As Liu's wife, Plaintiff was the primary beneficiary of the Policy.

At the beginning of Liu's employment, he was offered two types of life insurance benefits under the Policy: (1) "Basic Benefits," equal to one times his salary ("basic benefits"), and (2) supplemental "Voluntary Benefits," equal to up to four times his original salary ("supplemental benefits"). At this time, Liu's life was insured for $100,000 through Plaintiff's employer's benefit plan. Liu initially elected to receive only basic benefits, equal to one times his salary, and was automatically approved and enrolled for these benefits.

It is unclear whether Plaintiff or Liu received a copy of the Policy before Liu's death. Plaintiff alleges that Liu never received the complete Policy. (Doc. No. 26 at 74.) And in an email to Defendant requesting a complete copy of the Policy after Liu's death, Plaintiff noted that she only had the "employer-provided pamphlet" but nothing with "detailed terms and conditions." (Doc. No. 26-1 at 2.) Plaintiff alleges that the only plan document she received before Liu's death was the summary plan description. The

4

summary document states only that "[t]o enroll for supplemental life coverage, you must complete a separate Cigna enrollment form" and that "evidence of good health *may* be required to enroll." (Doc. No. 26 at 24) (emphasis added).

Defendant disputes whether Plaintiff and Liu received a complete copy of the Policy before Liu's death by pointing to a letter from Plaintiff's counsel to Defendant in which counsel states that he is attaching a copy of an "insurance policy . . . which is blank" and that "[t]his is the insurance policy that [Liu] was given at the time when he was [*sic*.] first worked here." (Doc. No. 26 at 20-21.) However, it is not clear from the record what document was attached to counsel's letter or whether this document was the Policy discussed above.

In 2009, Liu and Plaintiff considered discontinuing Liu's life insurance from Plaintiff's employer and purchasing supplemental benefits through Defendant under the Policy. Plaintiff alleges that before taking action in this regard, the couple was told that Liu would automatically qualify for supplemental benefits if Liu submitted an application for such benefits ("Application") during the annual enrollment period, and the couple was not told that Liu would have to meet any insurability or good health requirement. (Doc. No. 26 at 20-21, 38-39.) It is unclear from the administrative record who Plaintiff alleges made this representation, whether this person was employed by Defendant, rather than by the Hospital or another entity, and what exactly this person said. For example, at various times throughout the administrative process, Plaintiff's attorney alleged in letters to Defendant that "Dr. Liu and his wife changed their positions in reliance on St. Lukes

[*sic.*] Hospital and Cigna Group Insurance Company's[1] representations that they would insure them for life insurance," that Liu "was told" by an unidentified speaker "that he would elect to be able to increase his coverage up to four (4) times his salary but would not have to prove evidence of good health or insurability," and that "St. Luke's and your company promised Mr. Liu the right for him to get increased coverage without disclosing to him that you would not insure him if he had a change in medical condition or a worsening of his condition." (Doc. No. 26 at 20-22, 38-40.) Likewise, Plaintiff's first amended complaint alleges that "[t]he couple was promised and was told," again by an unidentified person, "that [Liu] would automatically qualify for insurance coverage and thus not be subject to any conditions or limitations, since [Liu] had already been issued insurance for which he automatically qualified." (Doc. No. 17 at 3.) Plaintiff's affidavit is somewhat more precise. It states that "[t]he Cigna representative told us that Ping would automatically qualify for additional benefits up to four times his salary. The only thing Ping had to do was fill out the application and submit it during the annual re-enrollment period in November of 2009." (Doc. No. 27 at 1.) However, neither Plaintiff's affidavit nor the administrative record states the date on which these alleged representations were made.

Plaintiff alleges that in reliance on the representation that Liu would automatically qualify for supplemental benefits, Plaintiff dropped Liu's life insurance plan with her

---

[1]     Although neither party has informed the Court how Cigna Group Insurance ("Cigna") is related to Defendant, it appears from the administrative record that Defendant is a subsidiary of Cigna. (*See, e.g.,* Doc. No. 8; Doc. No. 26 at 72.) Defendant does not contend that it is a different entity than Cigna or that it could not be bound by the statements of a Cigna representative.

own employer, but, again, Plaintiff does not allege the date on which she did this.  (*See* Doc. No. 26 at 22, 39 & Doc. No. 17 at 3.)   Plaintiff's affidavit states only that "[r]elying on what the Cigna representative told us, my husband and I decided that I would drop the life insurance policy I had through Washington University right away, and he would apply for supplemental benefits in November."  (Doc. No. 27 at 2.)  Defendant denies that the alleged representations were made.

On November 12, 2009, Liu completed the Application for supplemental benefits in the amount of $184,000 under the Policy.  The Application is two and a half pages long and written in six point font.  The first page of the Application asks for the name, address, and other personal identifying information of the applicant and beneficiary, and the requested amount of coverage.  The bottom of this page states:

> I accept the insurance coverage elected above. . . . If I have not elected coverage, I understand that if I wish to participate at a later date, I may be required to furnish evidence of insurability at my own expense and that coverage is subject to the insurance company's approval.

(Doc. No. 26-4 at 79.)   The terms "insurability" and "underwriting requirements," which are discussed in the Policy, are not defined in the Application.  Liu signed the first page of the Application.  (*Id.*)  Below the signature line is a bolded box stating "***Important: You must also sign and date the Agreements and Authorization section***."  (*Id.*) (emphasis in original).

The second page of the Application asks questions about the medical history of the applicant and beneficiary, including whether either has been diagnosed with or treated for various medical conditions and diseases.  (Doc. No. 26-4 at 80.)  At the top and bottom of the second page are two more bolded boxes, the first stating "**IMPORTANT Please**

**complete each section that follows if it is needed. Read the Agreements and**

**Authorization. Sign and date the form in the space provided**," and the second stating

"*Important:* **You must also sign and date the Agreements and Authorization**

**section**." (*Id.*) (emphasis in original).

The final half page is labeled with the bolded and capitalized heading

"**AGREEMENTS AND AUTHORIZATIONS**," and states in relevant part:

> The conditions for the requested insurance to be effective are described in the policy and certificate. The approval of this request by the Insurance Company is one of those conditions. I understand and agree that:
>
> (1) This request will be a part of the policy that provides the insurance.
> (2) I may need to provide more medical info.
> (3) I may need to take medical tests and report the results to the Insurance Company.
> (4) I must report any change in my health status that happens before the insurance is effective.
> (5) Requested insurance will not be effective for a person if the person does not meet the underwriting requirements on the date insurance is to be effective.

(Doc. No. 26-4 at 81) (emphasis in original). The five conditions listed above are the

only conditions listed on the Agreements and Authorization page, and this page contains

a separate signature block. Both Liu and Plaintiff separately signed and dated the

Agreements and Authorization page containing the five conditions, including the

reporting condition. (*Id.*)

The Application also states on the bottom of the first and second page in bold and

italicized type: "*Return application to your employer. Be sure to make a copy for your*

*own records*." (*Id.* at 79-80) (emphasis in original). Defendant did not provide Liu or

Plaintiff a copy of the signed Application before Liu's death, and Liu did not retain a

copy of the Application.  There is no document other than the Application in which Liu made representations about his health to Defendant or which required Liu to report any change in his health status.

In December of 2009, after completing the Application for supplemental benefits, but before those benefits became effective, Liu was diagnosed with cancer, which was a change in his health status.  (Doc. No. 26-3 at 45.)[2]  It is undisputed that Liu failed to report this change in health status to Defendant.

On February 5, 2010, Defendant approved Liu's Application for supplemental benefits in the amount of $183,000, with an effective date of March 1, 2010.  (Doc. No. 21-3.)  After the approval, Defendant began withdrawing premiums from Liu's salary. On April 23, 2010, Liu died.

On May 15, 2010, a representative from the Hospital filed on Plaintiff's behalf a claim with Defendant for basic and supplemental benefits under the Policy.  Defendant received the request on May 18, 2010.  Defendant approved Plaintiff's claim for basic benefits on July 7, 2010, for $46,858.49, including interest.  (Doc. No. 26-4 at 70.) However, Defendant informed Plaintiff that her claim for supplemental benefits was still under review and requested additional information.  (*Id.*)

On September 7, 2010, Plaintiff requested a copy of the Policy.  Defendant provided Plaintiff with a copy of part of the Policy on September 16, 2010, but Defendant did not include a copy of the signed Application.  (Doc. No. 26-2 at 1-2.)

---

[2]   Liu's medical records reflect that he was experiencing health issues for at least one month before he submitted the Application for supplemental benefits.  (*See, e.g.,* Doc. No. 26-3 at 48-62.)

On January 19, 2011, Defendant notified Plaintiff that her claim for supplemental benefits would be denied.  (Doc. No. 26 at 75-78.)  As grounds for denial, Defendant asserted that Liu breached his duty to report any change in his health between the date his Application was filed and the date insurance became effective.  (*Id.* at 77.)  Defendant stated that if it had been aware of Liu's cancer diagnosis before the policy became effective, it would not have approved the Application because Liu would not have been "insurable."  (*Id.*)  In denying Plaintiff's claim, Defendant relied on information from the claim form, the Application, Liu's death certificate, Liu's medical records, and the Policy.  (*Id.* at 76.)  The original signed Application was provided to Plaintiff as an attachment to the letter denying Plaintiff's claim.  (*Id.* at 77.)

On March 16, 2011, Plaintiff appealed the initial denial.  (Doc. No. 26 at 74.)  Plaintiff's attorney thereafter wrote additional letters to Defendant asserting that Plaintiff's supplemental benefits claim should have been approved.  (*Id.* at 20-25, 38-41, 50-54.)  On multiple occasions, Defendant notified Plaintiff that a determination of her appeal would be made within the next thirty days.  (*Id.* at 13-19, 34-37, 48-49, 56.)  Defendant finally denied Plaintiff's appeal on March 20, 2012.  (*Id.* at 6-9.)  In denying Plaintiff's appeal, Defendant relied on the information it had used to evaluate Plaintiff's original claim for supplemental benefits and the letters Plaintiff's attorney sent during the appeal process.  (*Id.* at 7.)  Defendant indicated that the reason for denying Plaintiff's appeal was Liu's failure to report the change in his health status and also a new reason: that Liu falsely indicated in his Application that he had not been diagnosed in the last five

years with Hepatitis.  (*Id.* at 7-8.)  The latter reason was not listed in Defendant's initial denial letter.

Following the denial of Plaintiff's appeal, Plaintiff initiated this lawsuit against Defendant.  In defense of its decision to deny benefits, Defendant no longer relies on Liu's alleged misrepresentation in the Application regarding his Hepatitis diagnosis, but instead relies solely on Liu's undisputed failure to report the change in his health status. (*See* Doc. No. 47 at 16-18 & Doc. No. 37 at 8-9.)

## DISCUSSION

### I.  Standard of Review

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment shall be entered "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  On a motion for summary judgment, facts and all reasonable inferences must be construed in favor of the nonmoving party; however, "facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts."  *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc) (citation omitted).  "The nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts, and must come forward with specific facts showing that there is a genuine issue for trial."  *Briscoe v. County of St. Louis, Mo.*, 690 F.3d 1004, 1011 (8th Cir. 2012) (citations omitted).  The movant is entitled to summary judgment when the nonmovant has failed "to establish the existence of an element

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

### Reformation (Count I)

Both parties seek summary judgment with respect to Count I. This claim asks the Court to reform the Policy's Incontestability Clause by substituting the word "insured" for "claimant" to comply with Mo. Rev. Stat. § 376.697(3). The Missouri statute states:

> No policy of group life insurance shall be delivered in this state unless it contains in substance the following provisions, or similar provisions which, in the opinion of the director of the department of insurance, financial institutions and professional registration, are more favorable to the persons insured or are at least as favorable to the persons insured and more favorable to the policyholder . . .
>
> (3) A provision stating that a copy of the application, if any, of the policyholder shall be attached to the policy when issued, that all statements made by the policyholder or by the persons insured shall be deemed representations and not warranties, and that *no statement made by any person insured shall be used in any contest unless a copy of the instrument containing the statement is or has been furnished to such person or, in the event of death or incapacity of the insured person, to his beneficiary or personal representative*[.]

Mo. Rev. Stat. § 376.697(3) (emphasis added). The Policy's Incontestability Clause states only that "[n]o statement will be used to deny or reduce benefits or as a defense to a claim, unless a copy of the instrument containing the statement has been furnished to the *claimant*. In the event of death or legal incapacity, the beneficiary or representative must receive the copy." (Doc. No. 26-5 at 84) (emphasis added). Therefore, Plaintiff argues that the Incontestability Clause must be reformed to conform to the requirements of Missouri insurance law.

Plaintiff suggests that reformation is an appropriate remedy under 29 U.S.C.

§ 1132(a)(3), which authorizes civil actions by participants, beneficiaries, or fiduciaries

"(A) to enjoin any act or practice which violates any provision of this subchapter or the

terms of the plan, or (B) to obtain *other appropriate equitable relief* (i) to redress such

violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."

29 U.S.C. § 1132(a)(3) (emphasis added).

Defendant does not contest that the Policy was delivered in Missouri but argues

that Plaintiff's reliance on Missouri law for her reformation claim is preempted by

ERISA. Defendant also argues that Plaintiff's reformation claim does not constitute

"appropriate" equitable relief under 29 U.S.C. § 1132(a)(3) because Plaintiff already has

an adequate remedy for her injury in her legal claim to recover benefits under

§ 1132(a)(1)(B).

ERISA preempts state laws that "relate to any employee benefit plan," but it

explicitly exempts from preemption state laws "which regulate[] insurance, banking, or

securities." 29 U.S.C. §§ 1144(a), 1144(b)(2)(A). A state law "regulates insurance" if it

is "specifically directed toward entities engaged in insurance," and if it "substantially

affect[s] the risk pooling arrangement between the insurer and insured." *Ky. Ass'n of

Health Plans, Inc. v. Miller*, 538 U.S. 329, 341-42 (2003).

The Supreme Court has "repeatedly held that state laws mandating insurance

contract terms are saved from preemption under § 1144(b)(2)(A)." *UNUM Life Ins. Co.

of Am. v. Ward*, 526 U.S. 358, 375 (1999); *see also Ky. Ass'n of Health Plans, Inc.*, 538

U.S. at 339 n.3 (holding that state law rule "which dictates to the insurance company the

conditions under which it must pay for the risk that it has assumed . . . certainly qualifies as a substantial effect on the risk pooling arrangement between the insurer and insured"). There is, however, a distinction between "a substantive state insurance law, which if saved will provide a relevant rule of decision in an ERISA civil enforcement action, and a state judicial remedy, which is conflict-preempted . . . *even if* it was created or authorized by a state insurance statute." *Fink v. Dakotacare*, 324 F.3d 685, 689 (8th Cir. 2003) (emphasis in original) (citations omitted). Only the former is saved from preemption. *Werdehausen v. Benicorp Ins. Co.*, 487 F.3d 660, 669 (8th Cir. 2007) ("Of course, any state law *remedy* is preempted by ERISA's comprehensive remedial scheme[,] [b]ut . . . [Mo. Rev. Stat.] § 376.1361(13), [which] supplies a relevant rule of decision in resolving the Wederhausens' ERISA claims under 29 U.S.C. § 1132(a)(1)(B)" is not preempted.) (emphasis in original) (citations omitted). Here, where Plaintiff does not seek a state law remedy but seeks an equitable remedy under ERISA, 29 U.S.C. § 1132(a)(3), her reliance on Mo. Rev. Stat. § 376.697(3) to resolve the reformation claim is not barred by ERISA. *See Larson v. United Healthcare Ins. Co.*, 723 F.3d 905, 912 (7th Cir. 2013) ("[W]hen an [ERISA] plan includes an insurance policy, contract terms mandated by state insurance law become plan terms.").

Likewise, ERISA does not bar Plaintiff's equitable reformation claim as "appropriate relief" under 29 U.S.C. § 1132(a)(3) simply because Plaintiff also raises a claim to recover benefits under § 1132(a)(1)(B). The term "appropriate equitable relief" in § 1132(a)(3) refers to "those categories of relief that, traditionally speaking (i.e., prior to the merger of law and equity) were *typically* available in equity." *CIGNA Corp. v.*

*Amara*, 131 S. Ct. 1866, 1878 (2011) (emphasis in original) (citations omitted). One

such traditionally equitable remedy is "[t]he power to reform contracts[.]" *Id.* at 1879;

*see also Silva v. Metro. Life Ins. Co.*, No. 13–2233, __ F.3d __, 2014 WL 3896156, at

*10 (8th Cir. Aug. 7, 2014).

Defendant is correct that "where Congress elsewhere provided adequate relief for

a beneficiary's injury, there will likely be no need for further equitable relief, in which

case such relief normally would not be 'appropriate'" under ERISA. *Varity Corp. v.

Howe*, 516 U.S. 489, 515 (1996). Applying this principle, courts have held that ERISA

plaintiffs are barred from pursuing equitable claims under § 1132(a)(3) when a claim for

recovery of benefits under § 1132(a)(1)(B) would provide "adequate relief" for their

injury. *See, e.g., Wald v. Sw. Bell Corp. Customcare Medical Plan*, 83 F.3d 1002, 1006

("Because Wald is provided adequate relief by her right to bring a claim for benefits

under section 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), as she did in Count I, and she

seeks no different relief in Count II of her complaint, equitable relief would not be

appropriate in her case."); *Pilger v. Sweeney*, 725 F.3d 922, 927 (8th Cir. 2013) ("Where

a plaintiff is provided adequate relief by the right to bring a claim for benefits under

§ 1132(a)(1)(B), the plaintiff does not have a cause of action to seek the same remedy

under § 1132(a)(3)(B).") (citations omitted).

But this doctrine does not bar equitable claims seeking different relief for which a

claim for benefits does not provide an adequate remedy. *Hall v. LHACO, Inc.*, 140 F.3d

1190, 1197 (8th Cir. 1998) (holding that plaintiff's equitable claim for injunctive relief

was not precluded under ERISA where the equitable claim sought "significantly different

relief" than the claim for benefits). Here, Plaintiff's claim for reformation constitutes "different relief" that is unavailable in a § 1132(a)(1)(B) claim for benefits.

The Court notes that Plaintiff need not rely on a reformation claim to enforce Mo. Rev. Stat. § 376.697(3) because state insurance regulations may be considered directly in a claim for benefits under 29 U.S.C. § 1132(a)(1)(B). *See Amara*, 131 S. Ct. 1866 (holding that "29 U.S.C. § 1132(a)(1)(B) . . . allows a court to look outside the plan's written language in deciding what those terms are, i.e., what the language means," and citing *UNUM Life Ins. Co. of Am. v. Ward*, 526 U.S. 358, 377-379 (1999) as "permitting the insurance terms of an ERISA-governed plan to be interpreted in light of state insurance rules"); *see also Larson*, 723 F.3d at 912-13. Plaintiff appears to recognize this in her response to Defendant's motion, where she states for the first time that she is "also entitled to enforce § 376.697(3) *directly in her claim for benefits*." (Doc. No. 48 at 5) (emphasis in original). Nevertheless, nothing in ERISA bars the Court from reforming the terms of the Policy to conform to state insurance regulations, and the Court finds authority to do so here. Plaintiff is entitled to summary judgment on Count I.

**Recovery of Benefits (Count II)**

Both parties also seek summary judgment on Count II, Plaintiff's claim to recover benefits under 29 U.S.C. § 1132(a)(1)(B). The Policy grants Defendant discretionary authority to interpret the Policy's terms and determine eligibility for benefits. "When a plan grants an administrator this type of discretion, the district court reviews the administrator's construction of the plan terms for an abuse of discretion." *Silva*, 2014 WL 3896156, at *4 (citations omitted). "Under that standard, an administrator's decision

is upheld if it is reasonable, that is, supported by substantial evidence," meaning "more than a scintilla but less than a preponderance." *Darvell v. Life Ins. Co. of N. Am.*, 597 F.3d 929, 934 (8th Cir. 2010). The Court must defer to the administrator's interpretation of the plan "so long as it is 'reasonable,' even if the court would interpret the language differently as an original matter." *Id.* at 935.

To determine reasonableness, courts consider the following factors: "(1) whether the administrator's language is contrary to the clear language of the plan; (2) whether the interpretation conflicts with the substantive or procedural requirements of ERISA; (3) whether the interpretation renders any language in the plan meaningless or internally inconsistent; (4) whether the interpretation is consistent with the goals of the plan; and (5) whether the administrator has consistently followed the interpretation." *Darvell*, 597 F.3d at 935. "However, the dispositive principle remains that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace it with an interpretation of their own—and therefore cannot disturb as an abuse of discretion the challenged benefits determination." *Id.* (citations omitted).

Where, as here, the administrator has the "responsibility of both determining eligibility for benefits and also paying those benefits," this dual role may create a conflict of interest necessitating a "less deferential standard of review," which takes into account the conflict "as a factor when determining if an administrator has abused its discretion." *Silva*, 2014 WL 3896156, at *5 (citations omitted). "To obtain the advantage of less deferential review," however, "the claimant must show a palpable financial conflict of interest that has a connection to the substantive decision reached and raises serious

doubts as to whether the result reached was the product of an arbitrary decision or the plan administrator's whim." *Werdehausen*, 487 F.3d at 664 (citations omitted). Plaintiff has not raised the issue of a conflict of interest in this case, nor has she made the requisite showing to warrant less deferential review. Regardless, even if the Court were to consider the conflict of interest as one factor, the Court would still find that Defendant did not abuse its discretion in denying Plaintiff's claim for supplemental benefits.

Plaintiff asserts that under the terms of the Incontestability Clause, as reformed, and pursuant to Mo. Rev. Stat. § 376.697(3), Defendant may not rely on Liu's statement in the Application that he must report any change in his health status as a reason to deny benefits because Defendant did not furnish a copy of the Application to Liu before his death.

As reformed, the Incontestability Clause reads:

All statements made by the Employer or by an Insured are representations not warranties. No statement will be used to deny or reduce benefits or as a defense to a claim, unless a copy of the instrument containing the statement has been furnished to the insured. In the event of death or legal incapacity, the beneficiary or representative must receive the copy.

Plaintiff concedes that the plain language of Mo. Rev. Stat. § 376.697(3) (and the reformed Incontestability Clause) does not require a copy of the instrument to be furnished before the insured's death. However, Plaintiff argues that the intent of the Missouri legislature was to provide the insured an opportunity to examine the instrument and correct any misstatements before the instrument is used against him. Plaintiff argues that the statute must be liberally construed to effectuate this intent, and this intent is disserved if insurers are permitted to wait until after an insured dies to furnish

beneficiaries with a copy of the instrument. Plaintiff cites numerous cases from other

jurisdictions deciding state law claims and interpreting similar state statutes to require

applications to be furnished before the insured's death. *See, e.g., Johnson v. Prudential

Ins. Co. of Am.*, 519 S.W.2d 111,115 (Tex. 1975) (holding that under Texas statute,

which provides that "no statement made by any person insured shall be used in any

contest unless a copy of the instrument containing the statement is or has been furnished

to such person or to his beneficiary," insurer is required to "furnish promptly to the

individual insured copies of his application" and if "the insured die[s] . . . before the

insurer has had reasonable opportunity to furnish him with these copies, they may be

furnished to the beneficiary," and "[f]ailure to comply with this requirement will mean

. . . that the statements may not be used by the insurance company in contesting payment

of the benefit."); *Metzinger v. Manhattan Life Ins. Co.*, 455 P.2d 391, 394 n.7 (Cal. 1969)

(provision that "[n]o statement made by the Individual relating to his insurability shall be

used in contesting the validity of his insurance . . . unless . . . a copy of such instrument is

or has been furnished to the Individual or to his Beneficiary" must be construed to require

a copy to be "furnished during [insured's] lifetime"); *Schafer v. Valley Forge Life Ins.

Co.*, 318 N.E.2d 308, 309 (Ill. App. Ct. 1974) (same).

Defendant argues that the plain language of Mo. Rev. Stat. § 376.697(3) requires

only that a copy of the Application be furnished before a statement is "used" in a contest,

and that Defendant satisfied this requirement by providing a copy of the Application to

Plaintiff during the claims process. Defendant cites other cases interpreting similar

provisions as requiring only that the statement be furnished to the insured or beneficiary

before being admitted as evidence in trial.  *See Karpenski v. Am. Gen. Life Cos., LLC*,

No. C12-1569 RSM, 2014 WL 585843, at *11 (W.D. Wash. Feb. 14, 2014) (holding that

state statutes providing that "no written statement made by any person insured shall be

used in any contest unless a copy of the statement is furnished to the person or to his

beneficiary or personal representative" required only that application be furnished "1)

presently or 2) at some time prior to or during contest"); *Aliaga v. Cont'l Assurance Co.*,

No. 06-218 (KSH), 2006 WL 3290099, at *4-5 (D.N.J. Nov. 13, 2006) (holding that plain

language of New Jersey statute providing that "no statement made by any person insured

shall be used in any contest unless a copy of the instrument containing the statement is or

has been furnished to such person or his beneficiary" required only that insurer "furnish

[insured] or [beneficiary] with a copy of the application at some point before introducing

it as evidence in this case," and this requirement is satisfied by providing copy to

beneficiary "during the course of the administrative proceedings and discovery");

*McGeehan v. Am. Gen. Assurance Co.*, No. 03-CV-06312, 2004 WL 2584670, at *4

(E.D. Pa. Nov. 12, 2004) (holding that plain language of Pennsylvania statute providing

that "[n]o statement made by an insured shall be received in evidence in any controversy

between the parties to, or a claimant or claimants interested in, a life insurance . . . policy

unless a copy of the document containing the statement is or has been furnished to such

person or those legally acting on his behalf in the controversy" required only that "that a

copy of the document was provided prior to trial").

 Defendant also contends that even if Mo. Rev. Stat. § 376.697(3) could be read to

require that a copy be furnished before the insured's death, Defendant satisfied this

requirement by its statement in the Application instructing Liu to "***be sure to make a copy for [his] own records***."

The Court notes that the statutes and provisions in the cases cited by both parties are distinguishable from the Missouri statute and the reformed Incontestability Clause at issue in this case. Unlike the statutes and provisions in the cases cited by Plaintiff, Mo. Rev. Stat. § 376.697(3) explicitly allows the copy to be furnished to the insured's "beneficiary or personal representative" in the event of "death or incapacity of the insured." *Cf. Johnson*, 519 S.W.2d at 113; *Metzinger v. Manhattan Life Ins. Co.*, 455 P.2d at 394 n.7; *Schafer*, 318 N.E.2d at 309. Likewise, Mo. Rev. Stat. § 376.697(3) differs in substance from the statutes and provisions in the cases cited by Defendant. *See Karpenski*, 2014 WL 585843, at *14 (involving disability insurance provision and expressly distinguishing statutes concerning group life insurance contracts, for which there is the additional concern of giving insureds an opportunity to correct misstatements during their lifetime); *Aliaga*, 2006 WL 3290099, at *4 (relying on a distinction not present in Missouri statutory scheme, between New Jersey statute governing individual life insurance, which stated that application could not be used as evidence unless it was "attached to or endorsed upon the policy . . . when issued," and statute governing group life insurance for which "when issued" language was conspicuously absent); *McGeehan*, 2004 WL 2584670 , at *4 (relying on language in statute that statement need only be furnished to insured or insured's representative before being "received in evidence").

Moreover, none of the cases cited by either party on this issue discusses whether instructing the insured to retain a copy for his own records satisfies the requirement to

"furnish" a copy to the insured.  In short, the parties have not cited and the Court has not found any binding authority mandating the Court to adopt either side's interpretation of Mo. Rev. Stat. § 376.697(3).

But perhaps most significantly, none of the cases cited by the parties on this issue involved a claim for benefits under ERISA, particularly one subject to abuse-of-discretion review.  This is important because Plaintiff's claim does not turn on the Court's interpretation of the Policy's terms, as reformed by Mo. Rev. Stat. § 376.697(3). The Policy gives Defendant discretion to interpret its provisions.  The dispositive question is whether Defendant abused that discretion by applying an unreasonable interpretation of the disputed provision.  *Darvell*, 597 F.3d at 935.  The Court finds that Defendant's interpretation is reasonable.  It is undisputed that Defendant allowed Liu to review the Application before signing it, advised Liu to make a copy for his records by way of instruction in the Application, and provided a copy of the Application to Plaintiff during the claims process, in connection with the denial of her claim but before her appeal.  These actions are not contrary to the clear language of the Policy, as reformed, which requires only that the statement shall not be "used" in a contest unless a copy of the instrument containing the statement "is or has been furnished" to the insured "or, in the event of death or incapacity of the insured person, to his beneficiary."[3]  Mo. Rev. Stat. § 376.697(3).  Nor does the Court find that any of the other factors noted above

---

[3]    Although unnecessary to the Court's ruling today, the Court also notes that Plaintiff's rationale for requiring a copy of the Application to be provided before death, that is, to allow insureds the opportunity to correct misrepresentations, is not implicated here. Defendant no longer relies on any misrepresentation in Decedent's Application as a reason for denying Plaintiff's claim, but instead relies solely on Decedent's failure to report a subsequent change in his health status.

indicate unreasonableness.  Because Defendant did not abuse its discretion in denying Plaintiff's claim, Defendant is entitled to summary judgment on Count II.

**Estoppel and Waiver (Counts III, IV, and VI)**

Defendant moves for summary judgment on Plaintiff's equitable estoppel (Count III), promissory estoppel (Count IV), and waiver (Count VI) claims on the ground that these equitable claims are barred under ERISA.  The estoppel and waiver claims seek to preclude Defendant from denying Plaintiff's claim for benefits on equitable grounds. These claims seek identical relief as the claim for benefits under 29 U.S.C. § 1132(a)(1)(B), namely, $183,000 in withheld life insurance benefits, plus interest and attorney's fees and costs.

Although Plaintiff initially moved for summary judgment on Count III (but not Counts IV or VI), Plaintiff "plainly acknowledges" in her reply brief and in her response to Defendant's motion, that "she may be unable to state claims for estoppel and waiver, as they seek benefits under the Plan."  (Doc. No. 48 at 11 & Doc. No. 38 at 5.)

Thus, Plaintiff concedes, and the Court agrees, that because the injury asserted in Plaintiff's estoppel and waiver claims is adequately addressed in her § 1132(a)(1)(B) claim, Plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B).  *See, e.g., Pilger*, 725 F.3d at 927 (8th Cir. 2013) ("Where a plaintiff is provided adequate relief by the right to bring a claim for benefits under § 1132(a)(1)(B), the plaintiff does not have a cause of action to seek the same remedy under § 1132(a)(3)(B)."); *Wald*, 83 F.3d at 1006 (same); *Geissal v. Moore Med. Corp.*, 338 F.3d 926, 933 (8th Cir. 2003) (same); *Antolik v. Saks, Inc.*, 463 F.3d 796, 803 (8th Cir.

2006) (same); *cf. Silva*, 2014 WL 3896156, at *14 ("[W]e believe *Varity* only bars

duplicate recovery" and does not bar plaintiffs from asserting "alternative" claims based

on "different theories of liability."). The Court will grant summary judgment in favor of

Defendant on Counts III, IV, and VI.

## Breaches of Fiduciary Duty (Count V)

Both parties move for summary judgment on Plaintiff's breach of fiduciary duty

claims in Count V. Although Plaintiff's first amended complaint alleges numerous

breaches of fiduciary duty, Plaintiff's summary judgment briefs discuss only two of these

breaches.[4]

The primary breach of fiduciary duty alleged in Count V is based on Plaintiff's

assertion that someone, presumably associated with Defendant, told Plaintiff and Liu that

Liu would "automatically qualify" for supplemental benefits without informing the

couple that Liu would be subject to an insurability or good health requirement. Plaintiff

claims that, in reliance on this representation, she dropped the $100,000 life insurance

---

[4]     The remaining breaches of fiduciary duty alleged in Count V are that Defendant: (1)
failed to provide a copy of the Application to Decedent or Plaintiff before Decedent's
death; (2) included in the Policy an Incontestability Clause that violates Missouri law; (3)
asserted a new reason for denial of benefits on administrative appeal; and (4) took too
long to reach its benefits determination. (Doc. No. 17 at 13-14.) The first two of these
claims are entirely duplicative of Plaintiff's denial of benefits claim under §
1132(a)(1)(B), and for that reason, cannot support a claim for breach of fiduciary duty
under § 1132(a)(3)(B). *See, e.g., Pilger*, 725 F.3d at 927; *Wald*, 83 F.3d at 1006; *Geissal*,
338 F.3d at 933. Further, Plaintiff is not entitled to relief on these claims for the reasons
set forth above, regarding Count II. The third alleged breach is moot because Defendant
no longer relies on a new reason for denial of benefits. And the fourth alleged breach
fails as a matter of law because Plaintiff has not alleged any injury resulting from the
length of time it took to reach a benefits decision. *Amara*, 131 S. Ct. at 1881 (holding
that a breach of fiduciary duty claim under § 1132(a)(3)(B) requires a showing of harm).

policy she had through her employer.  Plaintiff alleges that her reliance was reasonable in light of the fact that Liu was automatically approved for basic benefits without having to meet an insurability or good health requirement, and in light of the ambiguous nature of the summary plan document, which is the only Policy document Plaintiff alleges to have received before Liu's death, and which states only that evidence of good health "may" be required.  To remedy her injury, Plaintiff seeks an equitable surcharge in the amount of $100,000.[5]

The second breach of fiduciary duty Plaintiff asserts in Count V is based on the allegedly misleading nature of Defendant's Application, including its print size, format, and failure to define key terms.   In addition to the surcharge, Plaintiff seeks an injunction requiring Defendant to amend its Application to more clearly and conspicuously define certain terms and requirements, to promptly furnish applicants copies of their completed Applications, and to refrain from asserting new grounds for denials of claims during the administrative appeal process.

Defendant argues, first, that as with the estoppel and waiver claims, Plaintiff's fiduciary duty claims fail because she has filed a simultaneous claim for recovery of benefits under 29 U.S.C. § 1132(a)(1)(B) and because compensatory damages such as the surcharge requested by Plaintiff are not available under § 1132(a)(3).

Regarding the merits of Plaintiff's fiduciary duty claims, Defendant argues that

---

[5]    The prayer for relief in Count V of Plaintiff's first amended complaint asks for restitution in the full amount of $183,000, and seeks the $100,000 surcharge only in the alternative.  (Doc. No. 17 at 15.)  However, Plaintiff's summary judgment briefs do not mention the $183,000 restitution request and focus only on the $100,000 equitable surcharge.

Plaintiff's misrepresentation claim fails because Plaintiff's assertions regarding the misrepresentation do not identify who made the representations, what the representations were exactly, or how they could possibly bind Defendant.[6] Moreover, Defendant argues that oral representations cannot be used to contradict the clear terms of the Policy, which includes an express "Insurability Requirement," which states in at least one place that the insurance company "will require evidence of good health," and which includes in the Application clear warnings that applicants "must report any change in [their] health that happens before the insurance is effective," and that "[r]equested insurance will not be effective for a person if the person does not meet the underwriting requirements on the date insurance is to be effective." (Doc. No. 26-5 at 86 & Doc. No. 26-4 at 79-81.)

Regarding Plaintiff's claim about the font size and formatting of the Application, Defendant points out that the Application is only two and a half pages, uses simple language, and highlights in several places the importance of the Agreements and Authorization section, which itself contains only five short conditions, including the reporting condition.

Before reaching the merits of Plaintiff's fiduciary duty claims, the Court will determine whether Plaintiff has the statutory authority to assert such claims. It is unclear whether Plaintiff asserts her breach of fiduciary duty claims under 29 U.S.C. § 1132(a)(2) or § 1132(a)(3). A breach of fiduciary claim under § 1132(a)(2) is "brought in a

---

[6] Defendant also asserts that any such representations would be inadmissible hearsay. As Plaintiff correctly responds, the statements are not offered to prove the truth of the matter asserted (i.e., that Decedent would qualify for supplemental benefits without having to meet an insurability or good health requirement), but for their effect on Plaintiff and Decedent. Therefore, the alleged statements do not fall within the definition of hearsay. *See* Fed. R. Evid. 801(c).

representative capacity on behalf of the plan as a whole" to recover remedies that "protect the entire plan." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009). Whereas § 1132(a)(3) more broadly authorizes "other appropriate equitable relief" for breach of fiduciary duty, including individual relief. 29 U.S.C. § 1132(a)(3)(B); *see also Silva*, 2014 WL 3896156, at *7. Because Plaintiff's breach of fiduciary duty claims include a request for individual relief in the form of an equitable surcharge, the Court will construe the claims as being brought under § 1132(a)(3).

Plaintiff correctly asserts that under the Supreme Court case, *CIGNA Corp. v. Amara*, 131 S. Ct. 1866 (2011), make-whole relief in the form of a surcharge or other monetary compensation may be available under § 1132(a)(3)(B) as a remedy for breach of fiduciary duty. *See Silva*, 2014 WL 3896156, at *9-11 ("[T]he Supreme Court's decision in *Amara* changed the legal landscape by clearly spelling out the possibility of an equitable remedy under ERISA for breaches of fiduciary obligations by plan administrators," including "make-whole, monetary relief under § 1132(a)(3).")

However, whether such relief may be sought simultaneously with a claim for benefits under § 1132(a)(1)(B) is a "separate question." *Silva*, 2014 WL 3896156, at *12. As discussed above, applying the principal announced by the Supreme Court in *Varity*, the Eighth Circuit has held that an ERISA plaintiff is barred from asserting an equitable claim under § 1132(a)(3) where a claim for recovery of benefits under § 1132(a)(1)(B) would provide "adequate relief" for her injury. *See, e.g., Pilger*, 725 F.3d at 927; *Wald*, 83 F.3d at 1006; *Geissal*, 338 F.3d at 933.

Recently, the Eighth Circuit interpreted *Varity* and its progeny as "prohibit[ing]"

duplicate *recoveries* when a more specific section of the statute such as § 1132(a)(1)(B),

provides a remedy similar to what the plaintiff seeks under the equitable catchall

provision, § 1132(a)(3)." *Silva*, 2014 WL 3896156, at *13 (emphasis in original).

However, the *Silva* Court held that *Varity* does not bar a plaintiff from proceeding on

alternative theories of liability. *Id.* at 14. The Court reconciled the decisions of its

predecessors, including *Pilger* and *Wald*, which dismissed duplicative § 1132(a)(3)

claims at the summary judgment stage, by reasoning that at the summary judgment stage,

"a court is better equipped to assess the likelihood for duplicate recovery, analyze the

overlap between claims, and determine whether one claim alone will provide the plaintiff

with 'adequate relief.'" *Id.*

After analyzing the claims in this case, the Court finds that Plaintiff's claim for an

equitable surcharge is not barred because § 1132(a)(1)(B) does not provide "adequate

relief" for Plaintiff's injury. The injury alleged and the relief sought in Plaintiff's breach

of fiduciary duty claims are different than the injury alleged and relief sought in her claim

for benefits and, for that matter, in her claims for estoppel and waiver. The claim for

benefits and the estoppel and waiver claims are all based on Defendant's alleged

wrongful denial of benefits. These claims assert that Plaintiff was injured by the denial

of benefits and seek as relief the full amount of the withheld benefits. By contrast,

Plaintiff's breach of fiduciary duty claims, at least as they relate to the alleged

misrepresentation regarding Liu's automatic qualification for benefits, assume that the

denial of benefits was *permitted* under the terms Policy, but claim that Defendant's

misrepresentations regarding the Policy terms caused Plaintiff a different injury: the loss

of coverage under a different insurance policy.  Plaintiff cannot find adequate relief for this injury under § 1132(a)(1)(B), which limits a plaintiff's recovery to benefits due or rights provided "under the terms of the plan," or under § 1132(a)(2), which limits recovery to remedies that "protect the entire plan," *Braden*, 588 F.3d at 593.   The only ERISA remedy available to address Plaintiff's injury is the equitable catchall remedy provided under § 1132(a)(3)(B), and Plaintiff is thus permitted to assert her claim under that section.  *See Gore v. El Paso Energy Corp.*, 477 F.3d 833, 840 (6th Cir. 2007) ("[D]ismissal of the § 1132(a)(3) claim is appropriate only if the alleged injury to plaintiff may be completely remedied under the asserted § 1132(a)(1)(B) claim for benefits, or any other § 1132 provision for that matter.") (citation omitted); *Jones v. Am. Gen. Life & Accident Ins. Co.*, 370 F.3d 1065, 1074 (11th Cir. 2004) ("Because the Appellants concede for purposes of this claim that they are not entitled to the group life benefit under the terms of their plan, the Appellants must rely on § 502(a)(3) or they have no remedy at all.") (citation omitted).[7]

Having found that Plaintiff is not barred from asserting her breach of fiduciary duty claims, the Court now turns to the sufficiency of evidence in support of those claims.  Defendant does not dispute that, as the named fiduciary responsible for

---

[7]    Nor is it relevant that Plaintiff concedes that to the extent she prevailed on her claim for recovery of benefits, her claims for breach of fiduciary duty would be rendered moot. (Doc. No. 54 at 8.)  An award of benefits would have merely made the need for *relief* moot, but that does not address the question of whether Plaintiff's alleged *injury* in her breach of fiduciary duty claims is duplicative of the injury alleged in her claim for benefits under § 1132(a)(1)(B).  *See Gore*, 477 F.3d at 840 ("The fact that Plaintiff's claim for an equitable remedy 'could have been' resolved if his § 1132(a)(1)(B) claim was resolved in his favor, does not mean that his claim" is barred under the rule of *Varity*).

reviewing claims under the Policy, it has fiduciary obligations to plan participants under

ERISA. *See Silva*, 2014 WL 3896156, at *16 n.8 ("MetLife and Savvis both have

fiduciary obligations to plan participants under ERISA because they are both

administrators of the Plan"); 29 U.S.C. § 1002(21)(a) ("[A] person is a fiduciary with

respect to a plan to the extent . . . he has any discretionary authority or discretionary

responsibility in the administration of such plan."); 29 U.S.C. § 1102(a)(1) ("Every

employee benefit plan . . . shall provide for one or more named fiduciaries who jointly or

severally shall have authority to control and manage the operation and administration of

the plan.").

 Thus, Defendant has a fiduciary obligation to "discharge [its] duties with respect

to a plan solely in the interest of the participants and beneficiaries . . . with the care, skill,

prudence, and diligence under the circumstances then prevailing that a prudent man

acting in a like capacity and familiar with such matters would use." 29 U.S.C.

§ 1104(a)(1). In accordance with this obligation, Defendant "may not affirmatively

miscommunicate or mislead plan participants about material matters regarding their

ERISA plan when discussing a plan." *Kalda v. Sioux Valley Physician Partners, Inc.*,

481 F.3d 639, 644 (8th Cir. 2007) (citations omitted). Additionally, Defendant "has a

duty to inform when it knows that silence may be harmful, and cannot remain silent if it

knows or should know that the beneficiary is laboring under a material misunderstanding

of plan benefits." *Id.* (citations omitted).

 "To establish a claim for breach of fiduciary duty based on alleged

misrepresentations concerning coverage under an employee benefit plan, a plaintiff must

show: (1) that the defendant was acting in a fiduciary capacity when it made the challenged representations; (2) that these constituted material misrepresentations; and (3) that the plaintiff relied on those misrepresentations to their detriment." *Knowlton v. Anheuser-Busch Cos.,* No. 4:13-CV-210 SNLJ, 2013 WL 5873334, at *3 (E.D. Mo. Oct. 30, 2013) (citing *James v. Pirelli Armstrong Tire Corp.*, 305 F.3d 439, 449 (6th Cir. 2002)). A representation is material "if there is a substantial likelihood that it would mislead a reasonable employee in the process of making an adequately informed decision regarding benefits to which she might be entitled." *Kalda*, 481 F.3d at 644 (citation omitted). With respect to reliance, "[i]n federal law, a person cannot rely on an oral statement, when he has in hand written materials disclosing the truth." *Frahm v. Equitable Life Assurance Soc'y*, 137 F.3d 955, 961 (7th Cir. 1998); *see also Slice v. Sons of Norway*, 34 F.3d 630, 634 (8th Cir.1994) (explaining that with respect to similar equitable estoppel claims, an ERISA administrator may be liable only where "the terms of the plan are ambiguous *and* the communications constituted an interpretation of that ambiguity") (emphasis in original).

Viewing the facts in the light most favorable to Plaintiff, the Court concludes that they do not support Plaintiff's claim for breach of fiduciary duty based on misrepresentation. At best, Plaintiff alleges that someone told Plaintiff and Liu that if Liu completed the Application during the annual enrollment period, Liu would automatically qualify for supplemental benefits. This oral statement, even if made by Defendant, is not a misrepresentation. Plaintiff confuses qualification for coverage. Liu did qualify for benefits upon completing the Application during the enrollment period. However, Liu's

violation of an express condition in the Application resulted in the denial of coverage. Plaintiff makes plain in her affidavit that she and Liu were told that the Application would be required. And the Application unequivocally required notification of any change in health status and is not ambiguous in this regard. Plaintiff does not allege that anyone made any misrepresentation regarding whether Liu's statements in the Application or Liu's violation of an express condition in the Application could result in denial of coverage. The only representations in this regard were the written terms of the Policy itself, including the Application.

It is unclear whether Plaintiff dropped the other life insurance policy before or after Liu submitted his Application for supplemental benefits to Defendant. However, the representation on which Plaintiff claims to have relied in dropping the other policy made clear that Liu could not qualify for supplemental benefits from Defendant until he submitted an Application for those benefits. Therefore, it would have been unreasonable for Plaintiff to have dropped the other insurance policy before at least reviewing the Application, to see its requirements. *See Kalda*, 481 F.3d at 644 (explaining that a breach of fiduciary claim based on misrepresentation is not actionable unless "there is a substantial likelihood" that the representation "would mislead a reasonable employee in the process of making an adequately informed decision regarding benefits to which she might be entitled.").

And upon review of the Application, the completion of which the couple undisputedly knew was a condition to qualifying for supplemental benefits, Liu was on clear notice that he "*must* report any change in [his] health status that happens before the

insurance is effective." (Doc. No. 26-4 at 81) (emphasis added). Plaintiff does not assert that this reporting condition is ambiguous or that Liu could not understand from the language of the reporting condition that he was required to report a cancer diagnosis that occurred before the insurance became effective.

Plaintiff does point to other alleged ambiguities in the Policy, namely, the statements in the summary plan document and Application that evidence of good health or insurability "may" (rather than "will") be required, and the failure of these documents to define "insurability" or any other "underwriting requirements." (Doc. No. 26-4 at 79, 81; Doc. No. 26 at 24.) But Plaintiff does not contend that Defendant required evidence of good health or insurability from Liu, beyond that disclosed in the Application, before approving coverage in this case. Therefore, any ambiguity in this regard, or any failure of Defendant to orally inform Liu of a good health or insurability requirement, is irrelevant.

The reporting condition is the relevant condition here. Reporting may be related to insurability, in that Defendant suggests that it would not have approved coverage if Liu reported the change in his health status because Liu would not have been insurable. But the reporting condition is an independent requirement, set forth in unambiguous terms in the Application. And regardless of whether Liu received all parts of the Policy before his death, it is undisputed that Liu received and signed the Application, and both Plaintiff and Liu separately signed the Agreements and Authorization page containing the reporting condition. Therefore, Plaintiff cannot point to any misrepresentation, either oral or written, or failure to disclose, upon which to base a breach of fiduciary duty claim. *Cf.*

*Silva*, 2014 WL 3896156, at \*2-3, \*7-10 (recognizing potential breach fiduciary duty claim based on failure to disclose requirement to submit statement of health where there was no evidence decedent ever received notice of this requirement, and there was evidence that 200 other employees were approved for coverage without submitting a statement of health).

Plaintiff also alleges that the nature of the Application itself, including the size and format of its print, was misleading, but the Court finds that this claim, too, is without merit. Plaintiff argues that the reporting condition is unclear because it is in a small font size, appears in the middle of a list of items, is in the same font size and type as the surrounding terms, and is not underlined, italicized, or in bold. A review of the Application demonstrates otherwise. The entire Application is only two and a half pages long. Although the font size is small, the words are legible and written in plain English. The Application draws attention to the Agreements and Authorization section through several bold-type bordered boxes, and the Agreements and Authorization section is on its own page and requires a separate signature. Moreover, the reporting condition is one of only five short conditions listed on the page. Viewed in the light most favorable to Plaintiff, these facts do not support an actionable claim for breach of fiduciary duty based on the format of the Application. *See Rakes v. Life Investors Ins. Co. of Am.*, 582 F.3d 886, 894 (8th Cir. 2009) (where insurer disclosed right to change premium rate on first page of policy, in boldface, capital letters, no genuine issue of material fact was raised regarding whether policies' guaranteed renewable language constituted fraudulent representation).

Finally, although neither party addresses Plaintiff's burden of proof regarding her request for an injunction, the Court concludes that an injunction may not issue without a showing of irreparable harm.  *See Brown v. Assocs.' Health & Welfare Trust*, No. 2:07-V-02006-RTD, 2007 WL 2325946, at *4 (W.D. Ark. July 23, 2007) (rejecting contention that by authorizing injunctive relief, ERISA "shift[ed] the theory of that relief from the traditional standard of 'irreparable' harm"); *see also United States v. Grand Labs., Inc*., 174 F.3d 960, 965 (8th Cir. 1999) ("Injunctive relief is generally appropriate when there is no adequate remedy at law.  Probably the most common method of demonstrating that a legal remedy is inadequate is by showing that irreparable harm will result.") (citations omitted).  Plaintiff has not demonstrated irreparable harm, nor has she demonstrated that injunctive relief is otherwise warranted.  For these reasons, the Court will grant Defendant summary judgment on Count V.

## CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment is **GRANTED** with respect to Count I and **DENIED** with respect to Counts II, III, and V. (Doc. No. 21.)

**IT IS FURTHER ORDERED** that Defendant's motion for summary judgment is **DENIED** with respect to Count I and **GRANTED** with respect to Counts II, III, IV, V, and VI.  (Doc. No. 46.)

All claims having been resolved, a separate judgment will accompany this memorandum and order.

_____
AUDREY G. FLEISSIG
UNITED STATES DISTRICT JUDGE

Dated this 16th day of September, 2014.